UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20713-Civ-KING
MAGISTRATE JUDGE P.A. WHITE

RENEE RAINEY,                       :

    Petitioner,                    :

v.                                  :        REPORT OF
                                             MAGISTRATE JUDGE
WALTER A. McNEIL,[1]                :

    Respondent.                    :
_____

Introduction

Renee Rainey, a state prisoner confined at Homestead Correctional Institution at Miami, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking her confinement after the revocation of her conditional release.[2]

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

---

[1]Walter A. McNeil, has replaced James R. McDonough as Secretary of the Florida Department of Corrections, and is now the proper respondent in this proceeding. McNeil should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

[2]On the first page of the form petition, the petitioner also lists Dade County Circuit Court, case no. 07-15271. However, based upon a review of the claims raised in the petition, as well as, the arguments set forth in her traverse, it is evident that the petitioner is not attacking the constitutionality of the Dade County conviction. The petitioner is advised, however, that if she seeks to challenge that conviction, she should do so by filing a separate 2254 habeas petition.

For its consideration of this petition (DE#1), the Court has the petitioner's response to an order regarding the limitations period with supporting exhibits (DE#8), the response of the state to an order to show cause with multiple exhibits (DE#9), and the petitioner's reply (DE#10).

The petitioner challenges her confinement on the following two grounds:

1. Her due process rights were violated when the Parole Commission revoked her conditional release based on insufficient evidence. (DE#1:5).

2. Her due process rights were violated when the Parole Commission revoked her conditional release based on false and/or exaggerated statements of the victim. (DE#1:7).

3. Her due process rights were violated when the Parole Commission revoked her conditional release where there was no evidence that the petitioner willfully and substantially violated the terms of her release. (DE#1:9).

The pertinent procedural history of this case is as follows.[3] The petitioner was convicted on September 13, 1991 of manslaughter with a weapon, in Sarasota County Circuit Court Case No. 90-3697-F. (DE#9:Ex.A). In July 1999, the petitioner was released from confinement to conditional release supervision pursuant to Fla.Stat. §947.1405. (DE#9:Ex.C). Approximately six years later,

---

[3] Records maintained by the Florida Department of Corrections indicate that the petitioner's recorded criminal history spans approximately twenty years with multiple convictions entered in Sarasota County Circuit Courts. (DE#9:Ex.B); See http://www.dc.state.fl.us.

on July 28, 2006, the petitioner's Conditional Release Officer submitted a Violation Report, charging the petitioner with violating several terms and conditions of her supervised release, and the Florida Parole Commission issued a warrant for her arrest, on the basis that the petitioner failed to obey all laws, ordinances, or statutory conditions of her release in that she unlawfully threatened by word or act to do violence to an un-armed victim and created a well founded fear in said victim that such violence was imminent. (DE#9:Ex.D). The warrant also alleged that the petitioner did unlawfully injure or damage the property belonging to the victim. (Id.). The petitioner was returned to custody, and was notified of the charges against her and her rights in the revocation process. See State of Florida Parole Commission Notice of Hearing on Conditional Release Violation; Notice of Rights. (DE#9:Ex.E-F).

The petitioner denied the charges, she requested a final violation hearing, requested the appointment of counsel, and that three witnesses be subpoenaed to appear at the hearing. (DE#9:Ex.F).

The final revocation hearing was conducted on August 24, 2006. See Florida Parole Commission Summary of Violation Hearing. (DE#10:Ex.F). At the hearing, various documents were introduced into evidence, and the following witnesses offered testimony: Officer Morningstar, Officer Adams, Officer Cantrell, Ayesha Hill, and the petitioner. (Id.).

Officer Morningstar testified that on July 26, 2006, he was dispatched to a residence on a report of a disturbance. (Id.). When he arrived, he noticed a broken statute in the parking lot. (Id.). He then entered the residence, and spoke with the victim, Ayesha

Hill. (Id.). The victim had instructed the petitioner to leave the apartment, but the petitioner refused to do so. (Id.). An altercation ensued during which the petitioner threatened to hit the victim with an angel statute she was holding. (Id.). An unnamed third party intervened, and the petitioner left. (Id.). Once outside the apartment, the petitioner threw the angel statute into the parking lot, where it broke into several pieces. (Id.). Officer Adams also testified he observed the broken statute in the parking lot and was present when the victim gave her statement regarding the incident. (Id.).

Officer Cantrell testified that he was dispatched based on a call regarding a disturbance which was placed by the petitioner a few minutes prior to the victim's call. (Id.). When he arrived at the scene, the petitioner advised him that she and the victim had gotten into an argument, and that the victim had taken from the petitioner $100.00 and two photographs of children. (Id.). After conversations between Officer Cantrell and Officer Morningstar, the victim was also placed under arrest for criminal mischief and assault. (Id.). According to Officer Cantrell, the victim did not make any statements regarding the incident. (Id.).

The victim, Ayesha Hill, testified that two police officers came to her home on a report of a disturbance. (Id.). According to the victim, the petitioner arrived at her apartment with two dresses that the petitioner was going to sell to the victim's sister. (Id.). After the victim apprised the petitioner that the sister was not going to purchase any dresses, an argument ensued, during which the petitioner took the victim's angel, throwing it into the parking lot. (Id.). During cross-examination, the victim acknowledged that she made things look more serious than what it was, and indicated that she never wanted the petitioner arrested.

(Id.). The victim denied being in fear for her life, but acknowledged that it was a very escalated verbal altercation, and she became afraid when the petitioner threw the angel into the parking lot. (Id.). The victim also indicated that the angel, in fact, belonged to the petitioner, and that she [the victim] mistakenly believed it belonged to her. (Id.). At that time, the victim produced the statute she had mistakenly believed the petitioner had broken. (Id.).

The petitioner testified that on the day in question, she exchanged words with the victim, but denied ever threatening to hurt or otherwise kill the victim. (Id.). She denied throwing the angel statute, stating that it fell. (Id.).

At the conclusion of the hearing, the examiner first found the petitioner was guilty of violating the terms of her release by unlawfully threatening by word or act to do violence to the victim, and created a well founded fear in the victim that the violence was imminent. (Id.). The examiner, however, found the petitioner not guilty of unlawfully or maliciously destroying property belonging to the victim. (Id.). Based upon the foregoing, the hearing officer recommended that the petitioner's conditional release supervision be revoked and that she be returned to the Department of Corrections to complete her sentence. (Id.). Thereafter, the Florida Parole Commission by order entered on October 11, 2006, revoked the petitioner's term of conditional release, effective July 27, 2006, with credit towards her sentence for various specified periods of time. (DE#9:Ex.G).

The petitioner next challenged the revocation in the state courts. She filed in the Miami-Dade County Circuit Court on April 24, 2007, a pro se petition for writ of habeas corpus with

5

supporting exhibits, essentially raising the claims presented in this federal petition. (DE#9:Ex.H). The court issued a notice to the Florida Parole Commission to appear for a hearing in order to address the claims raised in the habeas petition. (DE#9:Ex.I). The Florida Parole Commission thereafter filed a motion seeking to vacate the order, and directing under applicable Florida Rules, that the court issue a show cause order. (Id.). It appears that the court thereafter denied the habeas petition without issuing the order to show cause. (DE#9:Ex.K).

The petitioner appealed the trial court's denial of habeas corpus relief to the Florida Third District Court of Appeal by way of a *pro se* petition for writ of certiorari with the alleging that the Florida Parole Commission had improperly revoked her parole supervision status. (DE#9:Ex.J). On November 9, 2007, the Third District Court of Appeal denied the petition without explanation. Rainey v. State, 970 So.2d 840 (Fla. 3DCA 2007)(table); (DE#9:Ex.K). The petitioner then came to this court, filing the instant habeas petition on March 13, 2008.[4]

As she did in the state trial and appellate courts, the petitioner challenges the revocation of her conditional release supervision on the basis that her due process rights were violated. The petitioner essentially maintains that the revocation was improper because (1) there was insufficient evidence to support the revocation; (2) the revocation was based on false and/or exaggerated statements of the victim; and, (3) there was no evidence that the petitioner willfully and substantially violated the terms of her release. (DE#1:9).

---

[4] The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

6

Since the petitioner does not challenge the constitutionality of a conviction, only her confinement, this Court construes the petition as one brought pursuant to 28 U.S.C. §2241. See Preiser, Correction Commissioner v. Rodriquez, 411 U.S. 475 (1973). See also Peoples v. Chatman, 393 F.3d 1352, 1353 (11 Cir. 2004)(stating that a federal habeas corpus petition challenging the actions of a state parole commission was properly brought pursuant to 28 U.S.C. §2241). Under the circumstances of this case, however, characterizing the petitioner petition as one filed pursuant to 28 U.S.C. §2241 is largely a distinction without a difference, because any habeas petition filed by a state inmate is subject to each of the procedural limitations imposed on §2254 petitions. Peoples v. Chatman, supra. See also Thomas v. Crosby, 371 F.3d 782, 785 (11 Cir. 2004)(finding that the petition was subject to both §2241 and §2254 even though the petition stated it was filed pursuant to §2241 and attacked a decision of the state parole commission rather than the petitioner's state court conviction), cert. denied, 543 U.S. 1063 (2005); Medberry v. Crosby, 351 F.3d 1049, 1063 (11 Cir. 2003)(holding that there is but one habeas corpus remedy for those imprisoned pursuant to a State court judgment, and it is governed by both §2241 and §2254; for those imprisoned pursuant to a State court judgment, the habeas corpus remedy is authorized by §2241, but is subject to §2254 and all of its attendant restrictions), cert. denied, 541 U.S. 1032 (2004).

The respondent properly does not challenge this petition as untimely filed. See 28 U.S.C. §2244(d)(1)-(2). The respondent also correctly concedes that the claims raised in this federal petition have been exhausted before the state courts.[5] See 28 U.S.C.

---

[5]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted her state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999);

7

§2254(b),(c). Respondent, however, claims that this petition merely raises issues of state law, rendering the challenges not cognizable in this federal habeas corpus proceeding. The respondent has also addressed the issues on the merits. It is beyond dispute that federal habeas corpus review encompasses errors of constitutional magnitude. 28 U.S.C. §2254(a).[6] See also 28 U.S.C. §2241(c)(3). The due process challenge raised in this petition is clearly cognizable in a federal habeas corpus proceeding, and the respondent's argument to the contrary is meritless. See Morrissey v. Brewer, 408 U.S. 471 (1972).

When reviewing on the merits claims raised in a federal habeas corpus petition, the provisions of the AEDPA provide that a prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court, unless the decision of the state court was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. §2254(d)(1), (2). See Williams v. Taylor, 529 U.S. 362, 405-

---

Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is required to present his/her claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his/her] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). In Florida, to exhaust challenges to the revocation of parole or, in this case, conditional release, a petitioner must first file a petition for writ of habeas corpus filed in the appropriate trial court and then an appeal from the order denying the petition for writ of habeas corpus. See Brown v. State, 738 So.2d 500, 502 (Fla. 5 DCA 1999)(holding that Florida appellate courts treat as petitions for writ of certiorari all appeals of denied petitions for writ of habeas corpus challenging Parole Commission's order revoking parole).

[6]The terms of 28 U.S.C. §2254(a) provide that a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that she is in custody in violation of the Constitution or laws or treaties of the United States.

06 (2000).[7] See also, Fugate v. Head, 261 F.3d 1206, 1215-16 (11 Cir. 2001).[8]

In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11 Cir. 2002) citing, Williams, 529 U.S. at 412. However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002). So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. Id. Further, a federal court must presume the correctness of the state court's factual findings. See 28 U.S.C. §2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11 Cir. 2001), cert. denied, 537 U.S. 870 (2002).

The petitioner claims that her confinement is violative of her

---

[7]A state court decision is "contrary to" clearly established federal law if a state court (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision amounts to an unreasonable application of federal law if the state court (1) "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular prisoner's case," or (2) "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

[8]The Eleventh Circuit has continued to stress the importance of the standard established in Section 2254(d), stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Crawford v. Head, 311 F.3d 1288, 1295 (11 Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." Crawford, supra at 1295, quoting Bell v. Cone, 535 U.S. 685 (2002). See also Hawkins v. Alabama, 318 F.3d 1302 (11 Cir.2003)(discussing AEDPA's limits on federal court authority).

due process rights, because her conditional release was unlawfully revoked by the Florida Parole Commission. In 1988, the Florida Legislature enacted the Conditional Release Program Act. See Section 947.1405 Fla.Stat. (West 1988). Conditional release is administered by the Florida Parole Commission and is a "post-prison supervision program for certain types of offenders that the legislature has determined to be in need of further supervision after release." Rivera v. Singletary, 707 So.2d 326 1998 (Fla. 1998). The legislature granted the Florida Parole Commission the authority and discretion to impose any special conditions of supervision the Commission determines are warranted in a particular case. See Fla.Stat. §947.1405(6). As with other supervised release programs like parole and control release, the Commission has broad authority to determine issues surrounding revocations of release. Rivera, supra. See also Lincoln v. Florida Parole Commission, 643 So.2d 668 (Fla. 2 DCA 1994).

It is first noted that there is no constitutional right to conditional release before expiration of a valid sentence. See Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979). However, if released, the loss of liberty necessitated in revocation proceedings requires that releasees be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973); Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Thus, persons already at liberty on parole, or other type of release, have a conditional liberty interest protected by the Fourteenth Amendment of the Constitution entitling them to certain minimum due process requirements during revocation proceedings.[9] Morrissey, 408

---

[9]Specifically, Morrissey v. Brewer, 408 U.S. 471, 489 (1972) held that persons already at liberty on parole have a conditional liberty interest protected by the Fourteenth Amendment of the Constitution entitling them to the following minimum due process requirements during parole revocation proceedings: (1) written notice of the claimed violations of parole; (2) disclosure of the evidence against the parolee; (3) the opportunity to be heard in person and to

U.S. at 489. In Florida, revocation hearings are governed by the same due process considerations. See Gillard v. State, 827 So.2d 316 (Fla. 1 DCA 2002)(citing Morrissey, 408 U.S. 471 (1972)).

The petitioner is not entitled to relief on her due process challenges. Specifically, as indicated above, review of the record demonstrates that before the final revocation hearing, the petitioner was given proper notice of the charges against her and all the rights to which she was entitled in the revocation proceedings. See Florida Parole Commission/ Conditional Release/Authority Notice of Hearing on Conditional/ Control Release Violation. (DE#9:Ex.F). The petitioner denied the charges, and requested a final violation hearing, and appointment of counsel. Id. At the final violation hearing, where witnesses were presented and documents admitted, the petitioner was afforded the opportunity to confront and cross-examine the witnesses who had appeared and examine all documentary evidence. See DE#9:Ex.F. Further, the petitioner testified in her own defense that she did not threaten or otherwise intend to cause the victim any harm. Id.

Review of the record in its entirety reveals that the petitioner received all procedural process to which she was due in connection with the revocation proceedings. Her revocation proceedings were fundamentally fair, and she therefore suffered no constitutional violation. See Gagnon v. Scarpelli, 411 U.S. at 781; Morrissey v. Brewer, 408 U.S. at 482. It is noted that a revocation proceeding is not a criminal trial. All that is required for revocation is that the evidence and facts reasonably demonstrate that the person's conduct has not been as good as

---

present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body such as a parole board; and (6) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. Id. at 489.

required by the terms and conditions of her release. See Mack v. McCune, 551 F.2d 251, 254 (10 Cir. 1977). A criminal prosecution is governed by the reasonable doubt standard, while the state's burden of proof in a revocation proceeding is considerably less. The two are therefore different. See Villareal v. United States Parole Commission, 985 F.2d 835, 839 (5 Cir. 1993).

In Florida, to meet its burden in a violation of supervised release proceeding, the state need only demonstrate by a preponderance of the evidence that the defendant committed the subject offense. See Miller v. State, 661 So.2d 353, 354 (Fla. 4 DCA 1995). As that is a lesser standard than is required to prove the criminal charge, a releasee's term of release may be revoked regardless whether he/she was ever charged or convicted of any particular new offense. See Mempa v. Rhay, 389 U.S. 128 (1967)(holding that revocation of probation may be based on the alleged commission of offenses for which the accused is never tried); United States v. Jolibois, 294 F.3d 1110, 1114 (9 Cir. 2002)(upholding a revocation of supervised release based upon actual conduct where the defendant was not prosecuted for that conduct). See also State v. Jenkins, 762 So.2d 535, 536 (Fla. 4 DCA 2000)(holding that a new criminal offense can constitute a probation violation even if nolle prossed by the state). A court at a revocation proceeding must conclude from the weight of the evidence only that a substantial violation occurred. See Wheeler v. State, 344 So.2d 630 (Fla. 2 DCA 1977).

In this case, the competent evidence admitted at the revocation hearing, which includes direct evidence in the form of testimony offered by the victim, and the officers who responded to the scene, clearly provided sufficient factual support for the finding that the petitioner violated at least one of the conditions

of her conditional release. Only support of a violation of a single condition of the terms of release is needed for revocation to be upheld. See United States v. McCormick, 54 F.3d 214, 219 n.3 (5 Cir.), cert. denied, 516 U.S. 902 (1995)(when reviewing decision to revoke supervised release based on several alleged violations, record need only support a violation of a single condition of release in order to be upheld by appellate court); Frick v. Quinlan, 631 F.2d 37, 39 (5 Cir. 1980)(same). See also Jones v. State, 678 So.2d 890, 893 (Fla. 4 DCA 1996)(holding that evidence supporting one substantive violation supplied a sufficient factual basis for revocation of probation). Thus, there was sufficient competent evidence to revoke the petitioner's probation. See Brecht v. Abrahamson, 507 U.S. 619 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946). Revocation was, therefore, warranted.[10]

In making its initial findings, the Examiner implicitly, if not explicitly, found the victim and officers' testimony credible, while rejecting the petitioner's testimony in part as incredible. The Parole Commission clearly accepted these findings, as it generally must.[11] Such a determination was proper. See e.g., Florida

---

[10]The federal principles in this area are similar. See, e.g. United States v. Ross, 9 F.3d 1182 (7 Cir. 1993)(although a probationer has a right to invoke his constitutional rights at a probation hearing, he does not have the additional right to avoid the express conditions upon which he was granted probation based on those privileges; he must make a choice, and if he is to enjoy the advantages of supervised release, he must comply with any lawfully imposed conditions of probation).

[11]In Florida, the Florida Parole Commission must make its decision based on the factual findings of its authorized representative, the hearing examiner. The Commission cannot disregard a hearing examiner's factual findings and substitute its own, where the hearing examiner's findings are supported by competent, substantial evidence. See Tedder v. Florida Parole Commission, 842 So.2d 1022 (Fla. 1 DCA 2003). See also Mabrey v. Florida Parole Commission, 858 So.2d 1176, 1183 (Fla. 2 DCA 2003); Merritt v. Crosby, 893 So.2d 598, 599 (Fla. 1t DCA 2005)("As we explained in Tedder v. Florida Parole Commission, (citation omitted), the Parole Commission is not at liberty to reweigh the evidence considered by the hearing examiner in order to find a violation where the

Parole Com'n v. Chapman, 919 So.2d 689 (Fla. 4 DCA 2006)(holding that Parole Commission was authorized to suspend inmate's parole release date, or effective parole release date, notwithstanding parole examiner's recommendations); Harvard v. Florida Parole Com'n, 782 So.2d 904, (Fla. 1 DCA 2001)(holding that Parole Commission is not bound by the recommendation of the parole examiner regarding the setting of a presumptive parole release date). Accordingly, the state courts properly upheld the revocation.[12]

Although the petitioner is understandably displeased with the outcome of the revocation proceedings, it is apparent from review of the record as a whole that the resultant confinement was solely based upon the petitioner's unwillingness or inability to conform to restrictions imposed by her term of conditional release. Thus, for the revocation of her release and the following incarceration, the petitioner has no one to blame but herself; it was her own doing. See, e.g., United States v. Ross, 9 F.3d 1182 (7 Cir.

---

examiner's finding to the contrary is supported by competent, substantial evidence.") Further, it is the function of the hearing examiner to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact based on competent, substantial evidence. Tedder, 842 So.2d at 1025, quoting, Heifetz v. Dep't of Bus. Reg., 475 So.2d 1277, 1281 (Fla. 1 DCA 1985). If, as is often the case, the evidence presented supports two inconsistent findings, it is the hearing officer's role to decide the issue one way or the other. Id.

[12]The state court's factual findings are generally entitled to a presumption of correctness and may be ignored only if the petitioner shows by clear and convincing evidence that the state court's determination was not fairly supported by the record. 28 U.S.C. §2254(e)(1). See Bui v. Haley, 321 F.3d 1304, 1312 (11 Cir. 2003). See also Griffin v. Wainwright, 760 F.2d 1505, 1511 (11 Cir. 1985)(quoting pre-AEDPA § 2254(d)). This principle holds true for both explicit and implicit findings of fact by a state court. See Green v. Johnson, 160 F.3d 1029, 1045 (5 Cir. 1998), cert. denied, 525 U.S. 1174 (1999). Accordingly, if it is clear that the trial court would have granted the relief sought by the petitioner had it believed the testimony of certain witnesses, "its failure to grant relief was tantamount to an express finding against the credibility of [those witnesses]." Marshall v. Lonberger, 459 U.S. 422, 433 (1983), citing, LaVallee v. Delle Rose, 410 U.S. 690 (1973). Review of the record yields no suggestion that the state court's material findings are not supported by the record or were otherwise deficient.

1993)(although a probationer has a right to invoke his constitutional rights at a probation hearing, he does not have the additional right to avoid the express conditions upon which he was granted probation based on those privileges; he must make a choice, and if he is to enjoy the advantages of supervised release, he must comply with any lawfully imposed conditions of probation).

It is therefore recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the Report.

SIGNED this 26th day of December, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Renee Rainey, Pro Se
     DC#734543
     Homestead Correctional Institution
     19000 S.W. 377th Street
     Florida City, FL 33034

     Sarah J. Rumph, Ass't Gen'l Counsel
     Florida Parole Commission
     2601 Blair Stone Road, Bldg. C
     Room C-225
     Tallahassee, FL 32399-2450